**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: 7:23-CR-80 (WLS-TQL-1) |
| | : | |
| JUSTIN LAMAR JACKSON, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **ORDER**

Before the Court is Defendant Justin Lamar Jackson's ("Defendant") Motion to Suppress (Doc. 37) ("the Motion"). Therein, Defendant moves to suppress evidence he contends was obtained in violation of his Fourth Amendment rights. (*See generally* Doc. 37). For the reasons stated below, the Motion to Suppress is **DENIED**.

### I.   RELEVANT PROCEDURAL BACKGROUND

The Government filed an Indictment (Doc. 1) as to Defendant on December 13, 2023. The Indictment charges Defendant with one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Defendant had an Initial Appearance and Arraignment before Federal Magistrate Judge Thomas Q. Langstaff on February 1, 2024. His trial is set for the February trial term in the Valdosta Division.

On August 30, 2024, Defendant filed the Motion to Suppress (Doc. 37) at bar. The Government filed a Response (Doc. 38) on September 12, 2024. The Court determined that a hearing was necessary to resolve the Motion and the Court held that hearing on December 5, 2024. At the hearing the Court heard arguments and received evidence from the Government and Defendant. The Court determined that no supplemental briefing was necessary, and it was appropriate to resolve the motion upon the Record presently before the Court. As such, the Motion is ripe for review.

### II.   FACTUAL FINDINGS

The following facts are derived from the evidence received at the December 5, 2024 hearing and the police incident report attached to Defendant's Motion (Doc. 37-2). At the hearing, the Government presented one witness: Officer Phillip Beeson, an officer with the

1

Alapaha Police Department. Upon review and consideration of the witness's testimony the Court makes the following findings.

In the early afternoon of September 2, 2022, Officer Beeson was on U.S. Hwy. 82 in Alapaha and observed a Honda CR-V traveling above the posted speed limit. His radar confirmed that the vehicle was traveling at 62 mph in a 45 mph zone. Officer Beeson stopped the vehicle as a result.

When Officer Beeson made contact with the driver, the officer identified himself and informed the driver of the reason for the stop. Officer Beeson requested the driver's license, but the driver informed the officer that he did not have it in his possession. Instead, the driver relayed that his name was "Justin Johnson" and that his date of birth was May 26, 1987. Officer Beeson returned to his patrol vehicle to locate the driver on the Georgia Crime Information Center ("GCIC") system, but no driver was found with the information given. Officer Beeson then returned to the stopped vehicle and informed the driver that no information was returned with the name and date of birth provided.

As Officer Beeson was speaking with the driver, he smelled marijuana in the vehicle. Officer Beeson then asked the driver to step out of the vehicle. Once the driver had left the vehicle, the driver and Officer Beeson began to converse, and during the conversation, the driver admitted that the name he originally gave the officer was false, and told him his real name—Justin Lamar Jackson. Officer Beeson detained Defendant and placed him in the patrol vehicle. A GCIC inquiry revealed that Defendant had a suspended driver's license; and the registration on the stopped vehicle was suspended and it was uninsured. The inquiry also revealed that Defendant was on probation for Aggravated Assault and False Imprisonment.

While Defendant was in the back of the patrol vehicle, he informed Officer Beeson that there was a firearm in the vehicle. Officer Beeson donned gloves and began to search the vehicle. During the search, Officer Beeson located two firearms under the driver's seat. Both firearms were loaded with a round in the chamber. Officer Beeson also recovered a camera bag with a glass container containing trace amounts of marijuana, a plastic bag containing a white powdery substance, digital scales, latex gloves, and plastic bags. In other words, "all the things through [his] narcotics training indicative of narcotics."

2

After locating the firearms in the vehicle, Officer Beeson placed Defendant under arrest on suspicion of Possession of a Firearm by a Convicted Felon. Officer Beeson then conducted a search incident to arrest—although it is unclear what evidence, if any, was recovered as a result of this search. Once the search was completed, Officer Beeson transported Defendant to Berrien County Law Enforcement Center. Officer Beeson issued four citations to Defendant for speeding, driving with suspended registration, driving without insurance, and driving while his license was suspended or revoked. Defendant was also charged with Possession of a Firearm by a Convicted Felon in violation of O.C.G.A. § 16-11-131.

Once Officer Beeson returned to Alapaha Police Department he conducted further investigation. He first contacted dispatch to run a check on the two recovered firearms, which revealed that one of the firearms was stolen in Adel, Georgia. As a result, Officer Beeson also charged Defendant with Theft by Receiving Stolen Property in violation of O.C.G.A. § 16-8-7. Next, Officer Beeson contacted Berrien County dispatch to run a criminal history check on Defendant. That search revealed that Defendant had previous felony convictions, but did not reveal additional information necessary to secure a warrant such as the date of conviction, the particular offense, and the jurisdiction.

On September 4, 2022, a probable cause hearing on the Theft by Receiving Stolen Property charge was held before Berrien County Magistrate Judge Doug Gaskins. The Magistrate Judge, after determining that probable cause existed, signed the warrant on the Theft by Receiving Stolen Property charge at 1:26 P.M. The warrant was served by Berrien County Law Enforcement Center. The same day, Officer Beeson contacted district attorney Studstill for further information regarding Defendant's previous felony convictions. The particular records necessary for a warrant were unavailable electronically, so those records had to be physically obtained from the charging jurisdiction. An associate of DA Studstill was sent to the courthouse in Adel to obtain the necessary information to secure a warrant for the Possession of a Firearm by a Convicted Felon charge.

After a delay to obtain the necessary records, the information was presented to Magistrate Judge Gaskins on September 6, 2022. He signed a warrant at 10:30 A.M. after determining that probable cause existed for the Possession of a Firearm charge. That warrant

3

was also served by Berrien County Law Enforcement Center. On December 13, 2023, nearly a year later, a Federal Grand Jury returned an Indictment for Possession of a Firearm by a Convicted Felon under federal law—the charge that is the subject of the instant case. (*See* Doc. 1).

### III.    LAW AND ANALYSIS

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Defendant, as the movant, "bears the burdens of proof and persuasion" that his Fourth Amendment rights have been violated. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (citing *United States v. Eyster*, 948 F.2d 1196, 1209 (11th Cir. 1991)).

As an initial matter, based on the brief submitted by Defendant and the arguments by Counsel, the Court does not find that Defendant has properly raised the issue of whether Officer Beeson's search of Defendant's vehicle and person on September 2, 2022, violated Defendant's Fourth Amendment rights. Instead, Defendant asserts that his Fourth Amendment rights were violated when Georgia state law enforcement officials failed to obtain a judicial determination of probable cause within a reasonable time of his arrest. He asks the Court to apply the Exclusionary Rule to suppress any evidence that resulted from his arrest.

#### 1.    Warrantless Search Exceptions

Even so, the Court makes clear that Officer Beeson did not violate Defendant's Fourth Amendment rights when searching Defendant's vehicle and person on September 2, 2022. After considering the evidence submitted, the Court finds that the Government has met its burden to show that the search of Defendant's vehicle was supported by probable cause, and therefore fits within the automobile exception to the warrant requirement. *See e.g.*, *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003). The Court also finds that Officer Beeson had probable cause to arrest Defendant based on the information available at the scene. Thus, a warrantless search of Defendant's person and the area within Defendant's immediate control did not violate the Fourth Amendment. *See e.g.*, *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Under either theory, a search of the unsecured area under Defendant's seat in the vehicle— where the two firearms at issue in this case were located—would have been proper. As such,

4

to the extent Defendant asserts that Officer Beeson violated his Fourth Amendment rights by conducting a warrantless search of Defendant's vehicle and person, if any, the Court rejects that argument.

### 2. Unreasonable Time for Probable Cause Determination

Proceeding to Defendant's asserted grounds for suppression, he contends, as noted, that the Court should apply the Exclusionary Rule based on the length of time between his arrest by Officer Beeson and the judicial determination of probable cause on his Possession of a Firearm by a Convicted Felon charge. The Court is unpersuaded.

Generally, the Court agrees with Defendant that an excessive time between an arrest and a judicial determination of probable cause can rise to the level of a Fourth Amendment violation. As first explained in *Gerstein v. Pugh*, 420 U.S. 103, 124–25 (1975), the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention. The Supreme Court clarified the requirement in *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), ruling that when a probable cause determination does not happen within 48 hours "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." So far, so good. From this *Riverside/Gerstein* "48-hour rule," Defendant surmises that his Fourth Amendment rights were violated by the unjustified delay between his arrest on September 2, 2022, and the probable cause determination by Magistrate Judge Gaskins on the Georgia State law Possession of a Firearm charge on September 6, 2022.

At the outset, the Court disagrees that Defendant can show a constitutional violation at all. *Riverside* and *Gerstein*, and their progeny, require only that a probable cause hearing be held within 48 hours, absent a showing of exigent circumstances. *See Riverside*, 500 U.S. at 56; *Gerstein*, 420 U.S. at 124–25; *Powell v. Nevada*, 511 U.S. 79, 83 (1994); *see also United States v. Cabezas-Montano*, 949 F.3d 567, 593 (11th Cir. 2020) (explaining the requirements of *Riverside* and its progeny). As such, after an initial timely probable cause determination, there is no requirement under *Riverside/Gerstein* that any subsequent probable cause determination after 48 hours be justified by an exigency. Defendant has identified no authority to the contrary.

Here, Defendant did, in fact, receive a probable cause determination within 48 hours of his arrest, when Magistrate Judge Gaskins signed the arrest warrant for Theft by Receiving

5

Stolen Property charge on September 4, 2022, at 1:26 P.M.[1] At that time, the *Riverside/Gerstein* requirement of a timely judicial determination of probable cause was satisfied. Although the warrant for the Georgia State law Possession of a Firearm charge was issued outside of the 48-hour window it was not necessary to justify Defendant's continued detention, because the probable cause determination on his Theft by Receiving Stolen Property charge was sufficient alone under *Riverside/Gerstein* to justify Defendant's continued detention.[2]

Even assuming, for argument's sake, that a *Riverside/Gerstein* violation occurred,[3] it does not justify suppression here. "The issue of whether suppression is an appropriate remedy for a *Riverside/Gerstein* violation is unresolved by the Supreme Court although the Supreme Court has held that exclusion is appropriate for other constitutional violations." *Lawhorn v. Allen*, 519 F.3d 1272, 1291 (11th Cir. 2008) (citing *Powell*, 511 U.S. at 85 n.*). In *Lawhorn*, the Eleventh Circuit suggested that the Exclusionary Rule may justify suppression of evidence obtained as a result of a *Riverside/Gerstein* violation. *Id.* at 1291 (declining to apply the Exclusionary Rule to a *Riverside/Gerstein* violation because the habeas petition at issue was filed many years after the asserted violation). Other Circuits have also approved of a suppression remedy for *Riverside/Gerstein* violations. *Id.* (citing *United States v. Davis*, 174 F.3d 941, 942, 946 n.8 (8th Cir. 1999); *United States v. Fullerton*, 187 F.3d 587, 592 (6th Cir. 1999) and *United States v. Sholola*, F.3d 803, 821 (7th Cir. 1997)).

---

[1] Officer Beeson's incident report reflects the time stamps of 3:34 P.M. and 5:49 P.M. on September 2, 2022. (*See* Doc. 37-2 at 1). Although it is unclear when within that time period Defendant was arrested, even assuming that his arrest occurred around 5:49 P.M., his probable cause hearing on September 4, 2022, at 1:26 P.M. was within 48 hours of Defendant's arrest.

[2] Defendant's focus on the Georgia State law Firearms Charge is somewhat of a red herring. Although the state charge bears the same name as the Felon in Possession of a Firearm charge which is the subject of the instant case, it is entirely distinct from a federal charge under § 924(c) and § 924(a)(8). Defendant did not receive a probable cause determination on the instant federal charge until December 13, 2023, and a warrant was issued on that charge the same day. There was, as such, more than a year between Defendant's Georgia arrest and the probable cause determination in this case, yet Defendant does not argue that that this delay was unconstitutional. In any event, it matters little because Defendant received a timely probable cause determination after his Georgia arrest.

[3] Which the Court finds it did not.

6

Under the Exclusionary Rule, a court may suppress "'primary evidence obtained as a direct result of an illegal search or seizure' and . . . 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)). Here, Defendant asserts that a *Riverside/Gerstein* violation unlawfully prolonged his detention after the 48-hour presumptively reasonable period—from around 5:49 P.M. on September 4, roughly 48 hours after Defendant's arrest on September 2, to the probable cause determination which occurred on September 6 at 10:30 A.M. Yet the evidence Defendant seeks to suppress occurred at the time of his arrest on September 2—48 hours *before* the asserted constitutional violation began. Thus, the timeline reveals that the evidence seized at the time of Defendant's arrest was neither the direct result of, nor derivative from, the asserted *Riverside/Gerstein* violation.

Indeed, Defendant's own proffered case, *United States v. Khan*, 625 F. Supp. 868 (S.D.N.Y. 1986), neatly illustrates this point. In *Khan*, the district court found that the Government had failed to timely bring the defendant, who was in custody, before a federal magistrate judge for a probable cause determination. *Id.* at 873–74.[4] During the period that Defendant's probable cause hearing was overdue, the Government conducted a lengthy interrogation at which Defendant made incriminating statements. *Id.* at 73. The district court suppressed the statements as the result of an improperly prolonged detention. As *Khan* illustrates, suppression may be a proper remedy for an improperly prolonged detention before a probable cause determination, but only when the evidence sought to be suppressed is collected during and as a direct result of the improper detention. The instant case is therefore readily distinguishable

---

[4] Although the district court in *Khan* suppressed the statements based on a violation of Fed. R. Crim. P. 5(a), the principle is the same: that suppression is warranted only for evidence recovered as the direct result of an impermissible delay before a probable cause hearing. *Khan*, 625 F. Supp. at 874.

7

Accordingly, the Court finds that, even assuming a *Riverside/Gerstein* violation occurred, the Exclusionary Rule does not justify suppressing the evidence collected by Officer Beeson at the time of Defendant's arrest.

## IV. CONCLUSION

In sum, the Court finds that the search of Defendant's car and person did not violate his Fourth Amendment rights—to the extent, if any, that Defendant challenges those searches. And the Court rejects Defendant's contention that a *Riverside/Gerstein* violation justifies suppressing the evidence gleaned from those searches because (1) no *Riverside/Gerstein* violation occurred, and (2) even if it did, the Exclusionary Rule does not justify a suppression remedy for the evidence obtained incident to Defendant's arrest because its discovery was not the direct result of, or derivative from, the asserted illegality. Thus, the Motion to Suppress (Doc. 37) is **DENIED**.

**SO ORDERED**, this 31st day of December 2024.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**